Seely Perry

*v.*

Jennie Carmichael *et al.*

*Filed at Ottawa June 16, 1880.*

1. Parties plaintiff—*to recover for death occasioned by negligence—under the statute of Indiana.* A married woman, who was a resident of this State, while traveling in the State of Indiana, was killed upon a railroad, the accident causing the death being occasioned, as was alleged, by the negligence of the railroad company. A person was appointed, in this State, administrator of the deceased, such administrator not being the husband. It was held, that under the statute of Indiana in force in 1859, the right of action to sue for and recover the damages against the company for the death was vested in the administrator, and he could be held accountable as such for money received, or which ought to have been received by him in such a suit.

2. Administrator—*liability for proper custody of funds.* Where a right of action is by law vested in an administrator, and in that capacity he brings suit for the recovery of money, but pending the suit a settlement is made in respect thereto, it is his duty to see to it that the proceeds of such settlement are placed in the hands of the persons who are lawfully entitled to them.

3. So, where an administrator of a married woman, whose death had been occasioned by the negligence of a railroad company, had brought suit against the company to recover damages on account of such negligence, permitted the surviving husband of the deceased to receive the proceeds of a settlement of the subject matter of the suit, without lawful right on the part of the husband so to do, in a suit by the children and heirs at law of the deceased, to whom the fund belonged, against the administrator to recover the money

so received by their father and not accounted for by him, it was held, the administrator was liable. The money so obtained constituted a trust fund for these children, and the administrator, whose duty it was to have received the money in the first instance, was bound to see that it reached the hands of those to whom it belonged, or their properly appointed guardian.

4.  SAME—*and herein, of the rights of the father as natural guardian of his children.* In such case, the mere fact that the father assumed the trust in respect to the money in behalf of his children, not having been appointed their guardian in the mode provided by law, would not operate to relieve the administrator from the duty of seeing that the fund should finally reach the persons to whom it belonged. As to the control of the person of a minor, the father is guardian by nature, but as to the estate of the minor, the father has no power except under an appointment.

5.  SAME—*as to marshalling equities in the interest of the administrator.* In the case mentioned, the suit by the heirs was against the administrator of their mother, and also against the administrator of their father, who had in the meantime also died. It was held, although the administrator of the mother was bound to see that the children should ultimately receive the money which he improperly permitted to go into the hands of their father, yet the father held the money in trust for his children, and the estate of the father was bound to respond to them therefor; and, as the administrator of the mother had received no pecuniary advantage from the transaction, he was entitled to be subrogated to the rights of the children in the estate of their father to the extent that he might be compelled to pay them.

6.  SAME—*and herein, of money held in trust as a preferred claim.* To the end, then, that the children should be secured in their rights, and the administrator of their mother be required to pay no more than should be necessary for the security of those rights, it was *held,* the estate of the father should be charged with the money as a trust fund, and as such to be allowed in a class of preferred claims, and in default of payment by the estate of the father, then the administrator of the mother be required to pay the same, but to be reimbursed out of the funds of the estate of the father which ought to have been applied in discharge of this claim.

7.  DEATH FROM NEGLIGENCE—*to whom the damages may be paid—under the statute of Indiana.* Under the statute of the State of Indiana, in force in 1859, in case of the death of a minor from the negligence of a railroad company, the right to recover and to receive compensation for such wrong was placed in the father of such minor, if he were living. So, when the administrator of such minor permitted the father to receive the money arising from that cause, he was held to have performed his whole duty in respect to the fund.

APPEAL from the Circuit Court of Winnebago county; the Hon. WILLIAM BROWN, Judge, presiding.

In June, 1859, Marshall H. Regan (then a resident of Illinois) and his wife, Lucinda M. Regan, and their daughter, Marian Regan, were traveling in Indiana on the Michigan Southern and Northern Indiana railroad, when the wife and daughter were both killed in what was known as the "Mishawaukee accident," as was claimed, by the wrongful act or omission of the railroad company.

By a statute of Indiana, in force at that time, it was provided in section 27 that a father  *  *  *  may maintain an action for the injury or death of a child, and a guardian for the injury or death of his ward," and in sec. 784, that, "When the death of one is caused by the wrongful act or omission, the *personal representatives* of the former may maintain an action against the latter.  *  *  *  The damages * * * must inure to the exclusive benefit of the widow and children,  *  *  *  to be distributed in the same manner as personal property of the deceased."

By another statute it was provided that the net proceeds of estates of deceased persons, in case of residence in another State, "shall be distributed according to the laws of that State."

In October of that year, Seely Perry, of Winnebago county, Ill., at the request of Marshall H. Regan, was appointed by the county court of that county administrator of the estate of Lucinda M. Regan, deceased, and also administrator of the estate of Marian Regan, deceased. This was done for the sole purpose of instituting actions in Indiana for the recovery of damages from this railroad company.

During the spring of 1860, Mr. Regan instituted, in the Circuit Court of the United States, in Indiana, actions against the railroad company, and in the name of Seely Perry, as administrator, and with his consent, for the injuries in question.

While these actions were pending, and about August, 1860, a successful negotiation was made by Mr. Regan with the railroad company for the settlement of the controversies involved in these actions and for the damages, if any, for which the company was liable on account of each of these injuries, but the agent of the company demanded as a condition that each release should be executed by Perry as administrator and approved by Regan.

As a result of that negotiation, a settlement was agreed upon by Regan and the railroad company and approved by Perry, and the following papers were executed by Perry and signed by Regan and delivered by Regan to the agent of the railroad company:

"Received from the Michigan Southern and Northern Indiana Railroad Company the sum of $1900, in full of all damages claimed by me as administrator of the estate of Lucinda M. Regan, growing out of or connected with the death of said Lucinda, or otherwise against said company, and to recover which an action has been commenced by me as such administrator against said company in the United States Circuit Court for the District of Indiana, and in consideration of said sum, I, as such administrator, do hereby release said company from any and all liability for such damages, if liability there may have been, and I agree that said suit shall be dismissed.

"Witness my hand and seal this — day of September, A. D. 1860.

SEELY PERRY, Admr.    (Seal.)

Attest: GEORGE M. GRAY.

"For the consideration above stated, I hereby concur in the above release and in the above mentioned settlement, and agree with said company that said release and settlement shall be final and conclusive.

MARSHALL H. REGAN.

Attest: GEORGE M. GRAY."

" Received from the Michigan Southern and Northern Indiana Railroad Company the sum of $1900, in full of all damages claimed by me as administrator of the estate of Marian Regan, growing out of or connected with the death of said Marian or otherwise, against said company, and to recover which an action has been commenced by me as such administrator against said company in the United States Circuit Court for the District of Indiana, and in consideration of said sum, I, as such administrator, do hereby release said company from any and all liability for such damages, if liability there may have been, and agree that said suit shall be dismissed.

" Witness my hand and seal this — day of September, A. D. 1860.

SEELY PERRY, Admr.   (Seal.)

Attest: GEORGE M. GRAY.

" For the consideration above stated, I hereby concur in the above settlement and release, and agree with said company that said settlement shall be final and conclusive.

MARSHALL H. REGAN.

Attest: GEORGE M. GRAY."

In consideration of these releases and vouchers, $900 in cash was paid to Marshall H. Regan, and a note was delivered to him in addition, payable to his order, for the sum of $1000, signed by the railroad company and personal security. All this was done with the knowledge and approbation of Perry. The $1000 mentioned in the note was paid at its maturity. Perry rendered no account to the county court as administrator. Regan was not appointed guardian for his minor children, and no account of this money was ever rendered by him to the children, or any of them. Perry never received personally any of this money, but seems to have left the whole matter to the management of Regan.

Marshall H. Regan married again, and afterwards, in February, 1875, died, intestate, leaving a widow, Adelaide Regan, and five children, his only heirs at law—these children being

the children of his first wife, Lucinda M. Regan, who lost her life in the railroad disaster in June, 1859, as stated above.

This suit is a bill filed in the circuit court of Winnebago county, to the January Term, 1876, by Jennie Carmichael, Emma Richardson, George Regan, and by Charles Regan and William Regan, minors, by their next friend, (the children of Marshall H. and Lucinda M. Regan, deceased,) against Perry, and against the administrators of the estate of Marshall H. Regan, deceased, claiming the sum of money received from the railroad company as a trust fund, and interest thereon.

The bill charges that, at the death of their mother, they were all minors, and that they were all minors at the date of the settlement of the suits.

The defendants answered the bill,—Perry, in his answer, insisting that he was not accountable for any part of the fund, and that the estate of Marshall H. Regan was accountable, and that on such account the expenses of bringing suits and obtaining the money should be deducted, and also divers moneys alleged to have been paid out by Mr. Regan, about the burial of his wife and daughter, and alleged to have been paid to, or laid out for, the complainants by Mr. Regan in his lifetime. The answer also interposes the Statute of Limitations as a defence.

Perry also filed a cross-bill setting up the same matters and asking that the estate of Regan be held alone responsible, and that the administrators of that estate be required to pay whatever claim the complainants may have in this regard, and praying "for such further and other relief," etc.

The circuit court ordered this cross-bill to be stricken from the files, on motion of complainant in the original bill.

Replications were filed, proofs taken, etc., and on final hearing the court decreed as follows:

"The above cause coming on to be heard upon complainants' bill, defendants' answers, the replications thereto and the testimony, and the court having heard the testimony and the arguments of counsel, doth find that said Marshall H.

Regan, as trustee for complainants, did receive moneys into his hands belonging to complainants, and one Henry Regan, since deceased, (which Henry Regan died, leaving complainants as his heirs) for which the estate of said Marshall H. Regan is now justly and equitably liable to complainants in their own right, (omitting all claims for the share of said Henry Regan) for the sum of $875, after allowing all just and equitable deductions and set-offs, which now justly and equitably belongs to said complainants, share and share alike, one-fifth thereof to each, and that the said Marshall H. Regan, also in his lifetime, with the knowledge, permission and consent of said defendant Seely Perry, received into his hands other moneys belonging to said Seely Perry, as administrator, as charged in complainants' bill, and which said Seely Perry receipted for and permitted said Regan to take and keep, when it then and there was the duty of said Seely Perry to have taken and accounted for the same as administrator as aforesaid, which equitably belonged to the complainants and said Henry Regan, and which it was the duty of said Perry to have taken himself and paid over to these complainants and said Henry Regan, and for which said Perry, in his own right, and the estate of said Marshall H. Regan, are jointly and equitably liable to complainants in the sum of $1166.66, omitting all claims for the share of said Henry Regan, which moneys belong to complainants, share and share alike.   And it further appearing to the court that, by agreement of parties, the shares of said Henry Regan in both of said funds have been excluded from the case, and all claims for the recovery of the same have been abandoned, and it appearing to the court that the other averments of complainants' bill are true : It is therefore ordered, adjudged and decreed, that the said defendants, John Lake and Adelaide Regan, as administrators of the estate of Marshall H. Regan, pay to the complainants, share and share alike, one-fifth to each, or to complainants' solicitors, for the said complainants, the said sum of $875, in due course of administration.

"And that the said Seely Perry, and the said John Lake and Adelaide Regan, as administrators of Marshall H. Regan, as aforesaid, jointly pay the complainants the said sum of $1166.66, and that the same stand as a joint judgment in favor of complainants against said Seely Perry, in his own right, and said John Lake and Adelaide Regan, as administrators of Marshall H. Regan, as aforesaid, and that complainants may have therefor execution against the lands, tenements, goods and chattels of said Seely Perry, and that the said John Lake and Adelaide Regan pay the same in due course of administration, complainants, however, only enforcing payment therefor once, and that the same be paid to complainants, or their solicitors for them, and that the said sum of $875 stand as a judgment at law against said estate of Marshall H. Regan, or against said administrators of said estate, and that complainants have all the process of court and all the remedies for the enforcement of the payment of said sum of $875 by said administrators of the estate of Marshall H. Regan, and for the enforcement of the payment of said sum of $1166.66 from said Seely Perry, in his own right, and from said John Lake and Adelaide Regan, as administrators of the estate of Marshall H. Regan, deceased, that they would have or be entitled to in case of judgments at law in similar cases, and that the said Seely Perry pay one-third of the costs of this case, and that execution and fee bill issue therefor, and that the said John Lake and Adelaide Regan, as administrators of the estate of Marshall H. Regan, pay two-thirds of the costs of this case, in due course of administration, but no execution or fee bill shall issue until after sixty days from this date; and it is further ordered that defendant Perry have the right to file a cross-bill against the defendants, administrators of the estate of Marshall H. Regan, for relief against said administrators, and to litigate the same, said cross-bill to be filed within twenty days."

The defendant Perry appealed.

Mr. C. M. BRAZEE, for the appellant:

Seely Perry, as administrator of the estate of these deceased persons, had no right to sue for the recovery of any damages against the railroad company in the State of Indiana. Rev. Stat. 1852, p. 426, chap. 88, sec. 3.

It is plain, from the Indiana statute above cited, that in all cases of death by the carelessness of railroad companies, the remedy was to be sought by the father, mother, or the minor child or children of the deceased.

It is inequitable to charge Seely Perry, in this suit, with the moneys recovered and received by M. H. Regan from the railroad company, for damages on account of the death of his wife, because he never received it, but it was paid to Regan on a compromise.

If this money so received by Regan was, in fact, the money of appellees, then it was received by their father, Marshall H. Regan, as the *executor de son tort* of the estate of Lucinda M. Regan, deceased, or as the guardian of these minors, of whom he was the natural guardian. If a person improperly intermeddles with the estate of a deceased person, he is deemed an *executor de son tort. Hawkins* v. *Johnson,* 4 Blackf. 21; Williams on Executors, 136; *Riley* v. *Goughley,* 22 Ill. 99.

If a person wrongfully interferes with the assets of a deceased person, he may become an *administrator* or an *executor de son tort.* So, a person may become a *trustee de son tort,* and he may be called to account. Perry on Trustees, 224 to 248.

Blackstone says that if an estate be left to an infant, the father is, by common law, the guardian, and must account to his child. Schouler on Domestic Relations, 392.

But this is because the law holds him, and all others, responsible as *quasi* guardian. Schouler on Domestic Relations, 392; Perry on Trustees, 224.

A *quasi* guardianship often arises at law, when there has been no regular appointment, and the general principle thus recognized is, that any person who takes possession of an

· infant's property takes it in trust for the infant. The father may thus become a *quasi* guardian. Chancery has full jurisdiction of all persons standing *in loco parentis.* Schouler on Domestic Relations, 443; *Van Epps* v. *Van Deuser,* 4 Paige, 71; *Pennington* v. *Fowler,* 3 Hals. Ch. 345; *Davis* v. *Harkness et al.* 1 Gilm. 173.

A court of equity will follow a trust fund into any hands or place where it can be found. This is a familiar rule, and unvarying: "Whoever comes into possession of trust money or property, with notice of the trust, is bound, with respect to that property, to the execution of the trust." *School Trustees* v. *Kirwin,* 25 Ill. 73; *Norton* v. *Hixon,* 25 id. 439.

There is no injustice done to the complainants by compelling them to look to the estate of M. H. Regan for the satisfaction of their claims, and there is no injustice done to the estate by compelling it to pay so much of the claims as shall be fairly established against it. For, in point of equity, the complainants below should look to the estate first, even if they may have ultimately a remedy against the appellant. 1 Story Eq. Juris. secs. 633, 634, etc.

The principle of debtor, creditor, sureties, and the like, as administered in courts of equity, forbids this proceeding against Mr. Perry, and compels the complainants below at least to exhaust the fund that should properly be charged, to-wit, the estate. 1 Story, sec. 499, etc.

The whole equitable doctrine of the "marshalling of securities" forbids these parties to pursue the appellant until they have fully exhausted their remedy against the estate. 1 Story, secs. 639, 644; id. secs. 559, 560, 561, 563, etc.; *Dorr* v. *Shaw,* 4 Johns. Ch. 17.

Messrs. CRAWFORD & MARSHALL, for the appellees:

Under the Indiana statute, the damages recovered of a railroad company for causing the death of a person through negligence must inure to the exclusive benefit of the widow and children, if any, and next of kin, to be distributed, etc. *Pitts-*

*burg, Fort Wayne and Chicago Railway Company* v. *Vinings, Admr.* 27 Ind. 518.

The Supreme Court of Indiana has sustained numerous judgments against railroad companies recovered by administrators, both resident and foreign, under the statute giving a recovery for death caused by carelessness, etc. *Jeffersonville, Madison and Indianapolis Railroad Company* v. *Hendricks, Admr.* 41 Ind. 48; *Indianapolis, etc., Railroad Company* v. *Kelly's Admr.* 23 id. 133; *Indianapolis, etc., Railroad Company* v. *Carr's Admr.* 35 id. 511.

The release in evidence acknowledges the receipt of $1900 by Perry, as administrator of the estate of Lucinda M. Regan, deceased. Having accepted the administration for the purpose of suing the railroad company, and thereby acquiring the right to sue, it became his duty to fulfill the trust and to use due diligence to collect the money, and it is not denied that he could have received the money.

There can be no *executor de son tort* when there is a rightful administrator, nor when creditors can be appointed administrators, and the law provides for an equal payment of debts. *Bacon* v. *Parker,* 12 Conn. 216; *Dixon* v. *Correll,* 5 Ohio, 533.

A distributee can never sue any one as executor *de son tort.* This right is only extended to a creditor when there is no administrator. 4 Bacon's Abridg. 32; *Vance* v. *Vance,* 5 Mon. 521; *Goodie* v. *Goodie,* 2 Murphy, 335.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

Appellant, by his counsel, insists that, under the statutes of Indiana, no right of action was vested in him, as administrator, to receive any part of the fund in question. As to that part of the fund paid on account of the death of Lucinda M. Regan, we think the right of action, by the Indiana statute, was placed in appellant, and it is only as to this part of the fund he is charged by the decree. On this ground he has no just cause to complain.

Appellant also contends that, inasmuch as he did not in fact himself receive any part of this fund, and had no active agency in the bringing of the suit, or otherwise in the procurement of the fund, he can not properly be charged with any part of the money received by Marshall H. Regan. We think otherwise. The right of action for its recovery was in him; the suit was begun and conducted in his name, and with his knowledge and consent, and the settlement was accomplished with his knowledge and approbation, and he destroyed the right of action by his own release, executed under his hand and seal, and the money, by his acquiescence, was placed in the hands of Marshall H. Regan. It was the complainants' money—a trust fund—and they were minors. The acts of Regan, in this regard, must be considered the acts of Perry, as between complainants and himself, and Perry thereby became bound to see to it that this portion of the fund should be placed in their hands, or in the hands of their lawful guardian. Regan evidently assumed to act as their guardian. Not having lawful authority to act as such, the receipt of the fund by him did not discharge Perry from his responsibility. In equity he stood as security, to these children, that the trust thus assumed by Regan would be faithfully fulfilled. The money in Regan's hands was a trust fund, and as to the children of his deceased wife he became, by the receipt of the money, a trustee. The mere fact that Regan assumed the trust, (not being lawfully authorized to do so,) did not relieve Perry from his responsibility.

It is insisted Regan was the natural guardian of his infant children, and as such had lawful right to the custody of their money. As to the control of the person of a minor, the father is guardian by nature. As to the estate of the minor, the father has no power, without an appointment, and in this way security is provided for the faithful performance of that trust. Perry, in permitting this fund to go into the hands of Regan, without his being appointed guardian in the proper way, could not relieve himself from ultimate responsibility.

This, however, was a trust fund in the hands of Regan,— he actually took the money, and Perry did not derive any pecuniary benefit therefrom. Justice and equity demand that (while the rights of the children of Lucinda M. Regan should be protected,) care be taken to do no injustice between Perry and the legal representatives of Marshall H. Regan, deceased, so far as the same can be done without impairing the rights of the children. The fact that her heirs are also his heirs, interested in the protection of his estate, enhances the necessity of this care.

In so far as concerns that part of the fund paid on account of the death of Mrs. Regan, we think the estate of Marshall H. Regan should be charged therewith, as trust funds in his hands at the time of his death, and the payment thereof to complainants, by his legal representatives, out of the assets of the estate in the class of preferred claims, should have been first ordered by the decree, and in default of such payment Perry ought to have been required by the decree to pay the same; and the decree should have, in such case, provided for the reimbursement of Perry, for such payment, out of the funds of the estate which ought to have been applied to the discharge of this claim. In other words, the decree ought to have declared the right of Perry to be subrogated to the rights of the complainants, in case of the payment to them by him of this claim; and the decree ought to have provided for the enforcement of such right. Perry had a right to claim, in this suit, this partial protection by a marshalling of the equities. This was not done, and for this reason the decree, as against appellant, must be reversed, and the cause remanded with directions to the circuit court to enter a decree in conformity to these views.

The order striking from the files the cross-bill is also set aside, and Perry should have leave (although not essential) to amend the same so as to state the relief sought more specifically.

Appellees insist, under cross-errors assigned, that Perry ought to be charged, also, with that part of the fund paid on account of the death of Marian Regan. It is insisted, it matters not whether Perry had or had not a right of action vested in him for the recovery of that fund, that, having chosen to intervene in a fiduciary capacity, and by that mode of proceeding having obtained the fund for the use of the children of M. H. Regan, it does not lie in his mouth to di-' vest himself of the responsibility incident to such attitude, by saying he had no lawful right to sue for or receipt for the money. Assuming this to be sound, we think his duty in that regard was fully performed. It seems plain, under the Indiana statute, that in case of the death of a minor, by the wrong of a railroad company, the right to recover and to receive compensation for such wrong is placed in the father of such minor, if the father be *in esse*. Perry, then, if chargeable for this part of the fund, was responsible that it should reach the hands of these complainants, or the hands of some one authorized by law to receive the same for them. The fund was created by the statute of Indiana. The same power which created the fund directed its payment to the father, to inure to the next of kin, under the law of descents in Illinois. The moment that part of the fund reached the hand of the father, the supposed liability of Perry ended, for Regan was, by the Indiana statute, the true and lawful custodian of that fund.

Other exceptions are taken to other parts of these proceedings, but these are all we deem it necessary to notice.

*Decree reversed.*

Mr. JUSTICE CRAIG, dissenting.