KOHTZ FAMILY TRUST, DATED DECEMBER 22, 1939, HARRIS TRUST AND SAVINGS BANK, TRUSTEE, 115 WEST MONROE STREET, CHICAGO, ILLINOIS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4372.   Promulgated August 6, 1945.

*W. A. McSwain, Esq.*, for the petitioner.
*Ned Fischer, Esq.*, for the respondent.

OPINION.

ARUNDELL, *Judge*: This is another of the numerous cases in which the taxpayer contends that a given legal instrument establishes multiple trusts and the Commissioner argues that it creates but one. In this, as in the others, the ultimate question is what the intention of the settlor was. The rule of law is simple, but the difficulty lies in its application.

It is our opinion that the intention of the settlor in this case, as gathered from the entire trust indenture, was to create three trusts, one for each of her children, rather than a single trust wherein the three beneficiaries should have equal interests. Here the trust agreement provides that the trustee "shall divide the trust estate into three equal shares," one for each of the three children of the settlor, and that the "share set aside for each child shall be held in trust for such child." The net income from each share is to be paid to the beneficiary of that share for life. The trustee is directed to pay, upon the written request of a beneficiary, "from the principal of the trust estate set aside for such child," an amount not exceeding 5 percent of the principal of such share. At the death of a child the trustee is directed to distribute "the share set aside for such child" among the descendants of that child.

In the first five or six articles of the trust indenture, at least, we discern a pattern or plan that is indicative only of an intent to establish three separate and distinct trusts. The question then arises whether the tokens of intent there to be gleaned are rendered ineffectual and the pattern destroyed by the later somewhat indiscriminate references, here in the singular and there (although less frequently) in the plural, to "this trust," "the trust estate," and "the trust estates." We think not. Such references in the singular, particularly with respect to the management of the property transferred by the settlor to the trustee, are not unnatural in view of the authority given the trustee not to make a physical division of the assets. We find here no fatal inconsistency impelling us to the conclusion that the purpose of the settlor to create separate trusts was abandoned. That purpose still remains.

The fact that the trustee, pursuant to the authority given by the instrument, did not make a physical division of the assets but held them in a common fund does not militate against the conclusion that there are separate trusts. We have it on the authority of the Supreme Court that an undivided interest in property may constitute the corpus

of a trust, and that, if there is an intention to establish separate trusts, the fact that the property is kept in a common fund does not defeat the intention. *United States Trust Co. of New York* v. *Commissioner*, 296 U. S. 481. We think that the provision authorizing the trustee not to make an actual division of the property is itself indicative of an intent to create more than one trust, for, if only one trust were intended, such a provision would be quite out of place in the instrument. In this connection the following language from the opinion in *Fiduciary Trust Co.* v. *United States*, 36 Fed. Supp. 653, 655, seems most appropriate:

Nor is the provision of Article Five D without significance. Authority is there given the trustees, in their discretion, to "keep the property held under this agreement in one or more consolidated funds in which one or more of the separate shares, parts or funds herein provided for shall have undivided interests, rather than to make physical division thereof, except when necessary for purposes of distribution." If a single trust was intended, the discretionary power here given the trustees would be unnecessary. However, if three separate trusts are provided for, the power to keep the corpus of the separate trusts as a single unit rather than to physically divide the corpus requires specific authorization by the settlor. The grant of discretionary power in the present agreement is indicative of the intention to create separate trusts.

Precedents adduced by the respective parties here are perhaps not entirely harmonious. If that be true, it is probably due to the fact that no two wills and no two trust instruments are exactly alike. As we have said before, in a case of this character other decisions and the instruments they construe are not particularly helpful. *Charles B. Van Dusen et al., Trustees*, 33 B. T. A. 662, 667. So far as other decisions may furnish helpful analogies, we think those in *Leonard Marx*, 39 B. T. A. 537, and *St. Louis Union Trust Co. et al., Trustees*, 40 B. T. A. 165, support our conclusion. *Marian Neal Trust*, 40 B. T. A. 1033, relied on by respondent, undoubtedly bears marks of resemblance to the instant case, but, while there was a direction to the trustee to divide the fund into three equal shares, it was not there provided, as in the instant case, that each such share should be held in trust. Furthermore, there was a provision that afterborn grandchildren should share equally with the three provided for in the agreement—a factor which, to some extent at least, influenced the decision that but a single trust was there set up. *McGinley* v. *Commissioner*, 80 Fed. (2d) 692, also relied on by the respondent, while having points of similarity to the instant case, was decided prior to the Supreme Court's decision in *United States Trust Co. of New York* v. *Commissioner*, *supra*, and at that time much emphasis was given to the fact that the trust corpus was not divided.

*Decision will be entered for the petitioner.*